UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RODGER DEAN ROBB,

Petitioner,

v.

MICHAEL O'KEEFE,
Minnesota Commissioner of
Human Services,

Respondent.

Civil No. 02-774 (PAM/JGL)

**REPORT AND RECOMMENDATION**

Attorney Gregory R. Solum, 7625 Metro Boulevard, Suite 140, Edina, MN, 55439, for Petitioner Rodger Dean Robb,

John L. Kirwin, Assistant Hennepin County Attorney, C-2000 Government Center, 300 South 6th Street, Minneapolis, MN, 55487, and Angela M. Helseth, Assistant Minnesota Attorney General, 525 Park Street, Suite 500, St. Paul, MN, 55103, for Respondent.

JONATHAN LEBEDOFF, Chief Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of Rodger Dean Robb for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) He is challenging his civil commitment, which was effected under Minnesota's Sexually Dangerous Person law. Respondent has opposed the petition, (Docket Nos. 11-13), contending that Petitioner is not entitled to relief on any of the claims he has raised. The issues have now been fully briefed by both sides, and the matter is presently before the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, it will be recommended that Petitioner's application for a writ of habeas corpus be denied, and that this action be dismissed with prejudice.

FILED 12-5-02
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD______
DEPUTY CLERK______

## I. BACKGROUND[1]

Petitioner has sexually assaulted numerous adolescent boys during the past thirty years. In the 1970s, while employed as a band teacher, he molested several of his students, including a ten-year old boy. He was convicted of disorderly conduct in 1976. Three years later he was accused of attempting to fondle the genitals of three more of his students. He pleaded guilty to one charge of second degree criminal sexual conduct and was sentenced to fifteen years in prison. His sentence was stayed, however, on the condition that he complete a treatment program provided at the Minnesota State Security Hospital.

Petitioner was not allowed to complete his treatment program, however, because he started molesting teenage residents of the hospital. He assaulted one of his young victims by fondling him while he was sleeping, and he assaulted another boy by fondling him, masturbating him, and performing oral sex on him. As a result of his renewed criminal activity, Petitioner was expelled from his rehabilitation program and sent to prison.

Petitioner's next documented sex crimes occurred approximately ten years later, in 1992 and 1993. During that period of time, Petitioner committed numerous assaults that ultimately resulted in three more criminal convictions for criminal sexual conduct, and another prison sentence. The Minnesota Court of Appeals described these later crimes as follows:

---

[1] The following synopsis of the history of this case is taken primarily from the Minnesota Court of Appeals' opinion in In the Matter of Robb, 622 N.W.2d 564 (Minn.App. 2001), review denied, April 17, 2001. Although Petitioner disagrees with some of that Court's legal analysis, he has not identified any material error in the basic background information provided by the Court's opinion.

> "In one of the 1993 incidents, Robb forced a 12-year-old boy onto Robb's bed, pulled down his pants, and masturbated him. Robb later masturbated the boy on ten to fifteen different occasions, performed fellatio on him four or five times, and had the boy masturbate him on three occasions. With three other victims, Robb created an environment in his apartment that was enticing to young boys. He gave the boys snacks, the street drug "rush", marijuana, or alcohol, and allowed them to play video games. On several different occasions, Robb masturbated the boys or performed fellatio on them. Robb showed some of the boys pornographic videos. During one incident, Robb pushed one of the victim's arms down, pinned his hands against his stomach, and performed fellatio on him. One of the boys reported that Robb used "mental manipulation" on them to get them to comply with Robb's requests. Robb often persisted in his sexual actions even after the boys told him to stop."

Robb, 622 N.W.2d at 567.

In 1999, when Petitioner was nearing the end of his most recent prison term, the State of Minnesota initiated a civil commitment proceeding against him. The State charged that he was both a "Sexual Psychopathic Personality," ("SPP"), and a "Sexually Dangerous Person, ("SDP"), under Minnesota law. After considering the evidence presented during a six-day trial, including the reports of several expert witnesses, the trial court concluded that Petitioner is both an SPP and an SDP. He was therefore committed to a treatment facility for further evaluation in accordance with Minnesota law. See Minn.Stat. § 253B.18 subds. 1-2. At the conclusion of that further evaluation process, the trial court conducted another hearing to determine whether Petitioner should be committed to state custody for an indeterminate term. After reviewing new expert witness reports on Petitioner's condition, the trial court reaffirmed that Petitioner should be detained as an SPP and an SDP.[2]

[2] The trial court's findings of fact and conclusions of law are included in the current record at Respondent's Appendix, (Docket No. 13), pp. A1-A23.

Petitioner appealed his commitment order to the Minnesota Court of Appeals. The state appellate court reversed the trial court's determination that Petitioner is an SPP, but agreed that he should be committed as an SDP. The Minnesota Supreme Court denied Petitioner's request for further review. Robb, supra.

Petitioner is now seeking federal habeas corpus review of his indefinite civil commitment. His current petition lists four claims for relief, (Petition, [Docket No. 1], "Attachment"), but one of those claims ("ground three") has two sub-parts. Thus, there are actually five claims presented here, which are as follows:

(1) that Petitioner was deprived of his constitutional right to substantive due process, because the State was not required to prove that he has a "special and serious" inability to control his dangerous sexual behavior;

(2) that Petitioner's civil commitment violates the Constitution's double jeopardy clause, because it is an additional "punishment" for his previous sex crimes;

(3) that Petitioner was denied due process, because he was required to rebut a statutory presumption that his criminal sexual conduct is harmful to victims;

(4) that Petitioner was denied due process, because the State was not required to prove there are no "less restrictive alternative" measures that could be used (in lieu of civil commitment) to control his dangerousness; and

(5) that Petitioner was deprived of his constitutional rights to equal protection and procedural due process, because -- in his own words -- "Petitioner has been confined despite the protections afforded by the U.S. Supreme Court in regard to the operative standards and procedures required for initial and continued confinement as an involuntarily civilly committed person." ("Ground Four" listed in the "Attachment" to the Petition, [Docket

No. 1].)

For the reasons discussed below, the Court will recommend that two of Petitioner's claims, (listed as claims (2) and (5) above), be summarily rejected, because they have been procedurally defaulted; and that his remaining claims, (claims (1), (3) and (4) above), be denied on the merits.

## II. PROCEDURALLY DEFAULTED CLAIMS

The Court will not consider the second claim and the last claim listed in the petition, which are labeled "double jeopardy" and "equal protection/procedural due process," because both of those claims have been procedurally defaulted. It is well established that a person in state custody who is seeking federal habeas corpus relief must "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts... by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). See also 28 U.S.C. § 2254(b); Rose v. Lundy, 455 U.S. 509, 518-19 (1982); Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam). The petitioner must exhaust his state court remedies by fairly presenting each of his constitutional claims to the highest available state court before seeking relief in federal court.

When a habeas petitioner has not exhausted his state court remedies with respect to some particular claim, and state procedural rules preclude any further attempts to satisfy the exhaustion requirement as to that claim, then that claim has been procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 750 (1991); McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997). See also O'Sullivan, 526 U.S. at 848 (petitioner's failure to present his federal habeas claims to the state supreme court in a timely manner results in

a procedural default of those claims). A claim that has been procedurally defaulted will not be entertained in a federal habeas corpus proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim. Coleman, 501 U.S. at 750 ("[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violations of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice").

In this case, Petitioner did not raise his double jeopardy claim, or his so-called "Equal Protection/Procedural Due Process" claim, in his briefs to the Minnesota Court of Appeals. Nor did he raise either of those claims in his petition for further review in the Minnesota Supreme Court. It is therefore evident that Petitioner has not satisfied the exhaustion of state court remedies requirement with respect to those two claims. Furthermore, it is now too late for Petitioner to return to the state courts, and attempt to raise those unexhausted claims in some new state court proceeding. Under Minnesota law, a person who fails to raise an available claim on direct appeal cannot later seek to raise that claim in a post-conviction proceeding. McCall, 114 F.3d at 757 citing State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976); Roby v. State, 531 N.W.2d 482, 484 (Minn. 1995). Because the second and fourth grounds for relief listed in the present petition were not fairly presented on direct appeal, and it is now too late to seek further state court review, those two claims have been procedurally defaulted.

The only remaining question is whether Petitioner has shown cause and prejudice, or a fundamental miscarriage of justice, to excuse his procedural default. Petitioner has made no attempt to satisfy either the cause and prejudice exception, or the fundamental miscarriage of justice exception, and the Court's own independent review of the record has disclosed no proper basis to excuse his procedural default. It will therefore be recommended that Petitioner's double jeopardy claim, (ground two), and his "equal protection/procedural due process," (ground four), be summarily dismissed based on the doctrine of procedural default.[3]

## III. REMAINING CLAIMS

A. Standard Of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the

---

[3] Petitioner's double jeopardy claim certainly is without merit in any event. In Kansas v. Hendricks, 521 U.S. 346 (1997), the Supreme Court held that a civil commitment of a sex offender "is not tantamount to 'punishment.'" Id. at 369. Therefore, a sex offender such as Petitioner does not have a viable double jeopardy claim simply because he is civilly committed based on some of the same events and circumstances that previously caused him to be convicted and sentenced for a crime.

It also should be noted that Petitioner could not be granted relief on the final claim listed in his petition. That claim, identified as "Equal Protection/Procedural Due Process," could not be sustained, because Petitioner has offered no facts or law to support it. There is nothing in the petition (or elsewhere in the record) to suggest that Petitioner was treated differently from other individuals facing civil commitment charges, or that he was otherwise deprived of his constitutional right to equal protection. Nor is there anything in the record to suggest that the process by which Petitioner was committed did not satisfy the procedural requirements of due process. The entire "Equal Protection/Procedural Due Process" claim consists of a single unexplained assertion, namely that Petitioner's confinement is contrary to "operative standards and procedures." Petitioner cannot be granted habeas corpus relief based on that conclusory assertion alone. See Wiggins v. Lockhart, 825 F.2d 1237, 1238 (8th Cir. 1987) ("to state an actionable habeas corpus claim, a petitioner "must allege sufficient facts to establish a constitutional claim[;] mere conclusory allegations will not suffice"), cert. denied, 484 U.S. 1074 (1988).

standards that govern this Court's review of habeas corpus claims raised by state detainees. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Supreme Court recognized that

> "a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."

Id. at 405.

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

Id. at 413.

The Court also explained that

> "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal

> law was objectively unreasonable.... [¶] [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

Id. at 409, 411 (emphasis added).

A writ of habeas corpus may also be available where the state courts' resolution of a case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the state court's judgment is based on findings of fact that could not reasonably be derived from the evidentiary record. When reviewing a state court decision, however, "a federal court... presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

Needless to say, a federal district court is not allowed to conduct its own de novo review of a habeas petitioner's constitutional claims. Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams.

B. Substantive Due Process Claim

In ground one of the present petition, Petitioner contends that he was deprived of his substantive due process rights during his civil commitment proceedings. He claims that the standards and criteria used by the state courts do not satisfy the constitutional requirements for civil commitment of sex offenders that were established by two recent

U.S. Supreme Court decisions – Kansas v. Hendricks, 521 U.S. 346 (1997) and Kansas v. Crane, 122 S.Ct. 867 (2002).

In Hendricks and Crane, the Supreme Court discussed the standards that should be applied when a state seeks to have a serial sex offender civilly committed. The Court reaffirmed in Hendricks that involuntary civil confinement of sex offenders is constitutionally permissible only for "those who suffer a volitional impairment rendering them dangerous beyond their control." 521 U.S. at 358. The commitment statute at issue in Hendricks was approved because

> "[i]t requires a finding of future dangerousness, and then links that finding to the existence of a 'mental abnormality' or 'personality disorder' that makes it difficult, if not impossible, for the person to control his dangerous behavior."

Id. The Court further explained that the Hendricks commitment statute would be upheld because "it narrows the class of persons eligible for confinement to those who are unable to control their dangerousness." Id.

In Crane, the Court revisited the "unable to control their dangerousness" requirement that was discussed in Hendricks. The Court initially emphasized that "Hendricks set forth no requirement of total or complete lack of control." 122 S.Ct. at 870 (emphasis in the original). The Court went on to explain that –

> "we did not give to the phrase 'lack of control' a particularly narrow or technical meaning. And we recognize that in cases where lack of control is at issue, 'inability to control behavior' will not be demonstrable with mathematical precision. It is enough to say that there must be proof of serious difficulty in controlling behavior. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case."

Id.

Citing this language from Crane, the instant Petitioner contends that the Minnesota state courts have misunderstood the constitutional requirements for civil commitment of sex offenders. He argues that Minnesota law, as interpreted and applied by the Minnesota courts, does not require the State to prove that the offender has a "serious" inability to control his sexual impulses. Petitioner concludes that his civil commitment is unconstitutional, because his "degree of uncontrollability" is no more serious than other "'dangerous but typical recidivist[s].'" (Petitioner's Memorandum, [Docket No. 14], p. 19, quoting Crane, 122 S.Ct. at 870.)

Petitioner offers three sub-arguments in support of his "degree of uncontrollability" substantive due process claim. First he contends that "Minnesota's standard of inadequate control of sexual impulses is vastly different from and, consequently 'contrary to' the Supreme court's rulings in Hendricks and Crane." (Id. at p. 18.) Next, he contends that the principles discussed in Hendricks and Crane were not reasonably applied in his case. Finally, he contends that the factual determinations made by the state courts are not supported by the evidence. The Court rejects all three of these arguments.

**(i) Minnesota's Commitment Standards Are Not "Contrary To" Hendricks and Crane**

The Minnesota Court of Appeals began its review of Petitioner's SDP commitment by noting that Minnesota law

> "'allows civil commitment of sexually dangerous persons who have engaged in a prior course of sexually harmful behavior and whose present disorder or dysfunction does not allow them to adequately control their sexual impulses, making it highly likely that they will engage in harmful sexual acts in the future.'"

Robb, 622 N.W.2d at 572-73, quoting In re Linehan, 594 N.W.2d 867, 876 (Minn.1999), cert. denied, 528 U.S. 1049 (1999) [hereafter "Linehan IV"[4]]. Petitioner contends that the Linehan IV civil commitment standard that was applied by the Minnesota Court of Appeals in his case is "contrary to" the standard mandated by Hendricks and Crane. He claims that Hendricks and Crane require a higher "degree of uncontrollability" than the Linehan IV standard used in his case. The Court disagrees.

In Hendricks, the Supreme Court observed that "we have never required state legislatures to adopt any particular nomenclature in drafting civil commitment statutes." 521 U.S. at 359. This theme was followed in Crane, where the Court clearly indicated that it was not prescribing any kind of minimum "inability to control behavior" standard that would have to be applied in all sex offender commitment cases. Referring to Hendricks, the Court said in Crane that "we did not give to the phrase 'lack of control' a particularly narrow or technical meaning." 122 S.Ct. at 870. While reaffirming that the state must prove the offender has at least some impairment of his ability to control his sexual impulses, the Court specifically recognized that "in cases where lack of control is at issue, 'inability to control behavior' will not be demonstrable with mathematical precision." Id. The Court plainly stated that it was not prescribing any "precise bright-line rules," but a "less precise constitutional standard." Id. at 871.

Thus, the Court rejects Petitioner's contention that the Supreme Court has established a specific "degree of uncontrollability" standard that must be satisfied in sex

---

[4] In re Linehan has been before the Minnesota appellate courts several times, most recently in the post-Hendricks proceeding cited in the text, which is frequently referred to as "Linehan IV."

offender commitment cases. Given the definitional flexibility specifically conferred by Hendricks and Crane, this Court cannot say that Minnesota's standard for assessing self-control, as described in Linehan IV and in Petitioner's case, is "contrary to" any specific minimum standard set by the U.S. Supreme Court.

**(ii) Minnesota's Courts Did Not "Unreasonably Apply" Hendricks and Crane**

Petitioner further claims that the Minnesota Court of Appeals misapplied the Hendricks/Crane requirement that a sex offender cannot be civilly committed unless the state proves that he is dangerous to others. Petitioner points out that in his case the Court of Appeals acknowledged that he "did not physically injure any of his victims," (Robb, 622 N.W.2d at 572), and he argues that it was therefore unreasonable for the Court of Appeals to conclude that he poses a danger to anyone.

This second sub-argument in support of Petitioner's substantive due process claim is flawed because it is based on the erroneous supposition that dangerousness necessarily involves a threat of serious physical violence. Petitioner seems to believe that courts are constitutionally required to assess the relative violence of a sex offender's past crimes, in order to identify those offenders who are likely to pose a future danger because of some mental abnormality or disorder. However, the Court finds nothing in Hendricks or Crane to support that proposition.

It is true that Hendricks and Crane do reaffirm the longstanding rule that sex offenders may be civilly committed only if they pose a danger to others. See Hendricks, 521 U.S. at 358 (approving the Kansas commitment statute because "[i]t requires a finding of future dangerousness, and then links that finding to the existence of a 'mental abnormality' or 'personality disorder' that makes it difficult, if not impossible, for the person

to control his dangerous behavior"). But those cases do not hold that the dangerousness requirement can be satisfied only by proof of the offender's propensity for serious physical violence. Petitioner has not pointed to anything in Hendricks or Crane (or elsewhere), which suggests that only physically violent sex offenders can be considered dangerous. Therefore, while the Minnesota Court of Appeals may have found Petitioner's crimes to be relatively non-violent, (compared to the crimes of other sex offenders), that finding alone does not cause Petitioner's civil commitment to be unconstitutional. The state courts did not misapply Hendricks or Crane simply because they found Petitioner to be sufficiently dangerous to warrant civil commitment despite the relatively nonviolent nature of his past offenses.

**(iii) State Courts' Fact Findings Are Reasonably Derivable From The Evidence**

Petitioner also contends that the state courts' findings of fact cannot reasonably be derived from the evidence of record. On close inspection, however, it appears that Petitioner is not really challenging the evidentiary support for the state courts' factual determinations; instead, he is claiming that those factual determinations do not support the legal conclusion that he can be civilly committed.

After considering the reports of the various mental health experts who were familiar with Petitioner's case, the trial court determined that Petitioner "continues to have the psychiatric diagnosis of "Paraphilia, Not Otherwise Specified," as well as a "Personality Disorder, Not Otherwise Specified, with Narcissistic and Antisocial Traits." ("Findings of Fact" listed in the "Order For Indeterminate Commitment," dated June 13, 2000, p. 2, ¶ 5; Respondent's Appendix [Docket No. 13], p. A22.) Petitioner has offered no "clear and convincing evidence" to rebut the presumed correctness of that determination. 28 U.S.C.

§ 2254(e)(1). In fact, it appears that Petitioner does not have any genuine disagreement at all with the trial court's description of his psychological condition.

Again, what Petitioner actually seems to be arguing is that his psychological condition, as found by the trial court, does not support the legal conclusion that he can be, and should be, civilly committed. That argument, however, is unsustainable. The evidence of record includes opinions from three expert witnesses who said, quite pointedly, that Petitioner poses a danger to adolescent boys, because he has a psychological disorder that prevents him from adequately controlling his sexual impulses.

Dr. Harry Hoberman opined that:

> "as a result of his prior sexual offending history and his mental, sexual and/or personality disorders, it is highly probable or likely that [Petitioner] will engage in acts of harmful sexual conduct in the future."

(Report of Harry M. Hoberman, Ph.D., dated August 1, 1999, p. 70; Respondent's Appendix [Docket No. 13], p. A171; [initial emphasis added, secondary emphasis in the original].)

Dr. Stephen A. Parker (who Petitioner selected as an examiner) reported that:

> "[Petitioner] has great difficulty controlling his impulses to sexual contact with underage adolescents. Though, in my opinion, it does not constitute an 'utter lack of power to control' those impulses, his unwillingness to take preventative action in the form of treatment or of removing himself completely from conducive circumstances certainly establishes an inability to control such impulses.... [Therefore, Petitioner] is a sexually dangerous person within the meaning of the statutory definition."

(Report of Stephen A. Parker, Psy.D., Licensed Psychologist, p. 22; Respondent's Appendix [Docket No. 13], p. A199; [emphasis added].)

Dr. Anita Schlank also concluded that Petitioner has a personality disorder, and that "if he were to be released without treatment," he would "present a high risk for reoffense."

(Report of Anita Schlank, Ph.D., L.P., dated February 25, 2000, p. 4; Respondent's Appendix [Docket No. 13], p. A223.)

In light of these expert witness statements, which Petitioner has not refuted by any evidence ("clear and convincing" or otherwise), this Court cannot say that the state courts "made an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). Indeed, based on the evidence presented to the trial court, it appears that it was eminently reasonable for the state courts to conclude that Petitioner poses a danger to others because of a psychological disorder that prevents him from adequately controlling his sexual behavior.

C. "Burden of Proof" Claims

Petitioner further contends that he is entitled to a writ of habeas corpus, because the state courts violated his constitutional right to due process by giving him the burden of proof on two issues -- (1) whether civil commitment represents the least restrictive means of restraining his dangerousness, and (2) whether the victims of his offenses suffered less emotional harm than is typical for victims of such offenses. Petitioner has not demonstrated that he is entitled to a writ of habeas corpus on either of these "burden of proof" claims.[5]

[5] Respondent has argued that both of Petitioner's burden of proof claims have been procedurally defaulted, because they were not fairly presented to, and decided on the merits by, the Minnesota appellate courts. Although Respondent's procedural default argument appears to be well-founded, the merits of Petitioner's claims will nevertheless be addressed, because the substantive inadequacies of his claims are even more readily apparent than the procedural inadequacies. See Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir.) ("judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated"), cert. denied, 528 U.S. 846 (1999); see also Khaimov v. Crist, 297 F.3d 783, 785-86 (8th Cir. 2002) (summarily dismissing habeas petitioner's appeal where a ruling in his favor on procedural default issues would leave him with "a procedurally valid, but meritless habeas corpus petition").

**(i) "Least Restrictive Alternative" Claim**

Petitioner claims that the state courts violated his constitutional rights by failing to ascertain and implement the least restrictive alternative means of dealing with the psychological disorders that make him a danger to society. Petitioner has cited one U.S. Supreme Court decision in support of this claim -- Foucha v. Louisiana, 504 U.S. 71 (1992). (Petitioner's Memorandum, [Docket No. 14], pp. 11-12.) However, he has made no effort to explain how the state courts' resolution of his case is "contrary to," or involves "an unreasonable application of," any constitutional principle established by Foucha. Petitioner has not pointed to, (and the Court cannot independently locate), anything in Foucha that says, either directly or indirectly, that states must identify and employ the least restrictive means of restraining a sex offender who meets the statutory and constitutional criteria for civil commitment.

The Court understands that a few lower federal courts may have adopted a "least restrictive alternative" requirement in some older civil commitment cases. See Conner v. Branstad, 839 F.Supp. 1346, 1351, n.5 (D.Iowa 1993) (noting that there is "some case law from other districts, but no circuit courts of appeal, support[ing] Plaintiff's theory of a right to rehabilitation in the least restrictive setting," and citing Philipp v. Carey, 517 F.Supp. 513, 518 (N.D.N.Y. 1981); Society for Good Will to Retarded Children, Inc. v. Cuomo, 572 F.Supp. 1300, 1347 (E.D.N.Y. 1983), vacated 737 F.2d 1239 (2d Cir. 1984)). But other courts have determined that the Constitution does not include such a requirement. In Conner, for example, the Court concluded that "the United States Constitution does not require that the Plaintiff class members be provided habilitation in the least restrictive environment." 839 F.Supp. at 1352. The decision in Conner was based on several circuit

court cases that "uniformly concluded that there is no federal right to treatment in the least restrictive setting." Id. at 1351, citing Lelsz v. Kavanagh, 807 F.2d 1243, 1251 (5th Cir.1987); Society for Good Will to Retarded Children v. Cuomo, 737 F.2d 1239, 1249 (2d Cir.1984) (Society for Good Will I); Phillips v. Thompson, 715 F.2d 365, 368 (7th Cir.1983); Jackson v. Fort Stanton Hosp. & Training Sch., 964 F.2d 980, 992 (10th Cir.1992).

There is no need for this Court to express an opinion as to whether the Constitution does or does not include the least restrictive alternative requirement advanced by Petitioner here. If there is such a requirement, it has not been recognized by any significant number of federal courts. It certainly cannot be said that the state courts, by not imposing such a requirement, decided Petitioner's case in a manner that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court." 28 U.S.C. § 2254(d)(1). Therefore, Petitioner cannot be granted a writ of habeas corpus based on his "least restrictive alternative" claim.

**(ii) Rebuttable presumption of harmfulness**

Petitioner's second burden of proof argument stems from Minnesota's statutory definition of a "Sexually Dangerous Person." To be an SDP, a person must have "engaged in a course of harmful sexual conduct," and must be "likely to engage in [future] acts of harmful sexual conduct" because of "a sexual, personality, or other mental disorder or dysfunction." Minn.Stat. § 253B.02 subd. 18c. The term "harmful sexual conduct" is defined as "sexual conduct that creates a substantial likelihood of serious physical or emotional harm to another." Minn.Stat. § 253.02 subd. 7a(a). There is a "rebuttable presumption" under Minnesota law that persons who have been convicted of certain types of criminal sexual conduct (enumerated in the statute) have committed "harmful sexual

conduct" for purposes of the SDP law. Minn.Stat. § 253.02 subd. 7a(b).

Because Petitioner has been convicted of criminal sexual conduct crimes listed in § 253B.02 subd. 7a(b), he was subject to the rebuttable presumption that he has engaged in "harmful sexual conduct." Petitioner did not successfully rebut that presumption in the trial court, and he was therefore found to have engaged in harmful sexual conduct for SDP purposes.

Petitioner now claims that the rebuttable presumption set forth at § 253.02 subd.7a(b) creates an unconstitutional misallocation of the burden of proof. This second burden of proof argument, however, suffers from the same fatal defect as the first one -- i.e., it is not grounded on any principle of federal law that has been clearly established by the Supreme Court. Once again, Petitioner's claim is based solely on Foucha v. Louisiana, and once again that decision does not support Petitioner's position.

In fact, Petitioner has not cited any case law that provides any direct support for his second burden of proof claim. On the other hand, there is at least one reported case that squarely rejects Petitioner's claim -- namely In re Kindschy, 634 N.W.2d 723 (Minn.App. 2001), rev. denied, (Dec. 19, 2001). Although this Court is not bound by Kindschy, the reasoning of that case is compelling. As the State Court of Appeals explained in Kindschy, § 253B.02 subd. 7a does not impose any improper burden of proof on a person facing possible civil commitment -- it merely defines "harmful sexual conduct" and provides a method by which the State can satisfy its burden of proving the existence of such conduct. As stated in Kindschy, "the statute allows the state to establish the element of likelihood of harm to others through proof that the respondent committed criminal sexual conduct in the first to fourth degrees[;] [but] [a]t all times the burden of proof remains with the state." 634

N.W. 2d at 730.

Kindschy also points out that Petitioner's burden of proof argument "is similar to one rejected by the Supreme Court in Jones v. United States, 463 U.S. 354... (1983)." Id.[6] Kindschy's explanation of Jones is accurate and enlightening, and it shows that the application of § 253B.02 subd. 7a in Petitioner's case is consistent with -- not contrary to or an unreasonable application of -- Supreme Court precedent. Therefore, Petitioner cannot be granted habeas corpus relief on his second burden of proof claim.

---

[6] As explained by the Minnesota Court of Appeals:

> "In Jones, the Supreme Court considered the constitutionality of the District of Columbia's civil-commitment law adopted by Congress. Under that law, a defendant acquitted of an offense by reason of insanity is automatically committed to a mental hospital until the defendant proves by a preponderance of the evidence that he or she is no longer mentally ill or dangerous. [463 U.S. at 356-58....] The defendant in Jones had been acquitted of misdemeanor theft by reason of insanity and was thereafter confined in a mental hospital under the District's commitment law. Id. at 359.... On appeal, he contended that the law unconstitutionally failed to require the District to prove present mental illness and dangerousness, as it would otherwise be required to do absent acquittal by reason of insanity. Id. at 362....
>
> The Supreme Court rejected this argument, holding that Congress could constitutionally infer dangerousness from the criminal act itself for purposes of civil commitment, even if the criminal act was a non-violent act involving property. Id. at 364-65.... The Court noted that the commission of a criminal act could reasonably be found to be 'at least as persuasive as any predictions about dangerousness that might be made in a civil-commitment proceeding.' Id. at 364.... Additionally, while recognizing the uncertainty inherent in psychiatric diagnoses and the tentativeness of professional judgments about dangerousness, the court concluded that the lesson to be learned 'is not that government may not act in the face of this uncertainty, but rather that courts should pay particular deference to reasonable legislative judgments.' Id. at 364 n. 13...."

Kindschy, 634 N.W.2d 730-31.

## IV. CONCLUSION

For the reasons discussed above, the Court concludes that Petitioner is not entitled to a writ of habeas corpus on any of the claims raised in his petition. His double jeopardy claim, (ground two), and his "equal protection/procedural due process," (ground four), must be denied because they have been procedurally defaulted. The remaining claims raised in the petition do not warrant habeas relief under the standards prescribed in 28 U.S.C. § 2254(d) and Williams v. Taylor. It will therefore be recommended that Petitioner's habeas corpus petition be denied, and that this action be dismissed with prejudice.

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, (Docket No. 1), be DENIED; and

2. This action be DISMISSED WITH PREJUDICE.

Dated: December 5, 2002

JONATHAN LEBEDOFF
Chief Magistrate Judge

Under D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by December 18, 2002 a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.